## Samuel S. Reed, Aaron A. Reed and Lydia Reitz, Appellants, *v.* Barney E. Adams.

*Ejectment—Equitable title—Evidence.*

A plaintiff in ejectment is not entitled to recover upon a sheriff's deed following a sheriff's sale of an alleged equitable title in his predecessor, where there is no evidence of a written agreement between the record owner under whom defendant claimed and plaintiff's predecessor, or a verbal agreement of sale followed by payment of purchase money, and possession of the land and improvements thereon, but only evidence of a writing in the nature of an agreement to sell to plaintiff's predecessor signed by the son of the record owner, who had no authority to make such sale, and who subsequently refunded the money paid to him and received back the writing, and where the defendant took possession and made valuable improvements under a purchase from the record owner, and the evidence is positive, clear and undisputed that the defendant never heard of plaintiffs' claim at the time of his purchase, and there was nothing upon the lot or upon the records which suggested that any person had any interest in it which qualified his vendor's title to it.

Argued May 28, 1895. Appeal, No. 50, July T., 1895, by plaintiffs, from judgment of C. P. Northumberland Co., Dec. T., 1888, No. 242, on verdict for defendant. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Ejectment for a lot of ground in Shamokin. Before SAVIDGE, P. J.

At the trial it appeared that John B. Douty in his lifetime was the record owner of the land in dispute; that in 1870, W. H. Douty, a son of John B. Douty, gave Tobias Koppen-

haffer a writing in the nature of an agreement to sell, called by the parties " a forfeiture receipt." A small amount of money was paid to W. H. Douty, which he subsequently returned and received back the receipt from Koppenhaffer. W. H. Douty never had any power of attorney or written authority from his father to make the sale. John B. Douty died on November 17, 1873. In 1870, Daniel Reed obtained a judgment against Tobias Koppenhaffer, and on September 3, 1872, levied upon and sold the lot in question. The sheriff executed and delivered a deed to Daniel Reed on January 16, 1873. Daniel Reed died on March 7, 1873. Plaintiffs are the heirs of Daniel Reed, deceased. Additional facts, and a recital of material portions of the testimony, appear by the opinion of the Supreme Court.

When Samuel S. Reed, a witness for plaintiffs, was on the stand, a receipt of which the following is a copy—" Shamokin, June 3d, 1873, Received from Mrs. read for backofen and pamment twenty Dollars in full. H. Schultz."—marked Exhibit " A," was shown witness, and he was asked who signed that paper. He answered, " H. Schultz."

Mr. Boyer: We now propose to read it to the jury. It is offered for the purpose of showing that the heirs of Daniel Reed, deceased, had actual possession of the lot in dispute and made improvements upon it.

Mr. Wolverton: Defendant's counsel object, because nothing contained therein has any tendency to prove possession or improvements by the heirs of Daniel Reed, deceased. The receipt does not show on what property these improvements were made, and there was other property adjoining the property in dispute.

The Court: Without some other evidence, I do not see that the receipt shows any improvements on this property. The offer is rejected; plaintiffs except, bill sealed. [1]

Mr. Boyer: Now your honor, we re-offer plaintiffs' " exhibit A," receipt number one, dated June 3, 1873. We think that it is some evidence to go to the jury that we put the bakeoven on, because H. Shultz is the signer of the receipt, and the witness has testified that Shultz's name was Henry. This paper is offered for the purpose of showing what it contains as some evidence in support of our claim of actual possession by the Reed heirs.

Mr. Wolverton: Defendant's counsel object to the offer, for the reason before stated when the same paper was previously offered. That there is nothing on the face of the paper which in connection with any testimony given here will show that this bakeoven was built by Henry Shultz for Daniel Reed or for his heirs.

The Court: We sustain the objection; plaintiffs except, bill sealed. [2]

When Barney E. Adams was on the witness stand for defendant the following offer was made.

Mr. Wolverton: We propose to prove by Mr. Adams that he purchased this lot in 1881 from the executors of John B. Douty. To be followed by the will of John B. Douty, showing the authority of the executors to sell. We wish to show that he bought the lot in question from the executors of John B. Douty.

Mr. Boyer: This is objected to, because it is immaterial whether he bought it at that time or at any other time which was subsequent to our sale. And he is incompetent under the act of assembly to testify in the cause, for his testimony would affect the Reed heirs, who claim by or through a prior title, when they cannot testify.

The Court: The act of assembly only renders him incompetent to testify to any fact that took place in the lifetime; the objection is overruled; plaintiffs except, bill sealed. [3]

When William H. Douty was on the witness stand for defendant the following offer was made:

Mr. Wolverton: We propose to prove by this witness that Tobias Koppenhaffer never had an agreement for the purchase of this lot, that he gave him a receipt as a penalty to be forfeited if he did not pay the balance, a receipt to the effect that if he did not pay the full amount he thereby forfeited the contract. We propose to prove by the witness the payments made to him by Adams, the defendant, on account of this purchase.

Mr. Cox: Objected to for the reason that John B. Douty, who made the contract with Tobias Koppenhaffer, is dead, and that William H. Douty is a son of John B. Douty and is interested in the property in question, that he is a surviving party entitled to an undivided interest in whatever his father's estate

may derive out of this suit in case the defendant is successful, and is therefore incompetent.

Mr. Wolverton : Will of John B. Douty, will book 6, page 153. Dated the 17th day of September, 1873. Proved November 20, 1873. Letters testamentary granted to William H. M. Oram and William R. Kutzner. Offered for the purpose of showing that William H. Douty is not a devisee nor a legatee under the will of John B. Douty, and that the executors had power to sell.

Mr. Wolverton reads the will.

The Court: It appearing from the will of John B. Douty, just read in evidence, that the witness is not a legatee nor a devisee under the will, that consequently he has no interest in the estate of the decedent, the objection is overruled, the testimony offered by this witness is admitted, and bill sealed for the plaintiffs. [4]

Tobias Koppenhaffer, called by plaintiffs for rebuttal, was asked on cross-examination :

Mr. Wolverton : What did you do with your agreement? A. My brother took it back to Mr. Douty. Q. Did you get your money back for it?

Mr. Boyer : What is your purpose ?

Mr. Wolverton : We propose to show by this witness that he sent the agreement by his brother to Douty, and got the money for it.

Mr. Boyer : That is objected to as not cross-examination.

The Court: We think that this is evidence in cross-examination—to show that the money was paid back to him.

Mr. Boyer : It cannot affect us unless they show that it was before our lien attached.

The Court: We will allow them to show on cross-examination that the witness returned his article of agreement through his brother or any other agency, and got the money back which he had paid on account of the purchase of this property; provided it was before the plaintiffs acquired their lien.

Mr. Wolverton : I only propose to show that he got his money back.

Mr. Boyer: Objected to. First, because it is not proper cross-examination. Second, because the offer does not propose to show that the money was returned before the lien of the plain

tiffs had attached, and therefore it is irrelevant.  Third be-
cause the witness cannot swear, personally, that the money
came from John B. Douty or from William H. Douty, and there-
fore at best it would be hearsay testimony—irrelevant and in-
competent.

The Court: The offer is admitted; plaintiffs except, bill
sealed. [5]

The court charged in part as follows :

[The first question for you to determine will be, whether
Tobias Koppenhaffer had any title to the lot in question; and
that will depend upon whether he took possession of the lot
under his purchase in 1870.  Unless he did take possession
under that purchase, he took no title; and of course nothing
passed by the sheriff's sale to Daniel Reed, and the plaintiffs
would have no title to the land in dispute.  If he did take pos-
session, then the judgment of Daniel Reed attached to the
equitable title of Tobias Koppenhaffer, and the sale upon that
judgment passed the Koppenhaffer equitable title to the pur-
chaser at that sale, Daniel Reed, and that title is in the plain-
tiffs by descent from Reed.] [6]

[Adams knew, of course, the title, and was bound to know
the title of John B. Douty.  That, if I remember correctly, was
upon record.  Douty's deed for the land, which he had acquired
sometime prior to 1870, was upon record.  If Adams found the
lot which he was about to purchase in 1881 of the executors of
John B. Douty unoccupied, vacant, without improvements upon
it, and with nothing there to indicate that any person was in
possession or claiming possession of that ground, of that lot,
with nothing there to show him that somebody else was claim-
ing to hold it other than the estate of John B. Douty ; and if
Adams purchased without actual knowledge of the Koppen-
haffer title from Douty ; and if Adams paid the purchase money
or a part of it and went into possession and improved the lot of
ground, then he would be an innocent purchaser for value and
would be protected under the law, his title would be better
than,—superior to,—the title of the Reed heirs.] [7]

[First determine whether Koppenhaffer had any title, whether
he went into possession under his agreement with Douty.  If
he did, then Daniel Reed by virtue of the sheriff's sale took
whatever equitable interest Koppenhaffer had.  If Koppen-

haffer did not go into possession, then Reed took nothing, and of course that would end the case, and you would not need to inquire any further.

Even though you find that Koppenhaffer did go into possession and that the Reed heirs therefore took the title which he had; yet if you find that Barney E. Adams was an innocent purchaser in 1881, who paid his purchase money or a portion of it, went into possession and made improvements on that lot of gound, without actual notice of the Koppenhaffer title then in the Reeds, and without anything upon the ground at or about the time to indicate to him that the Reeds were claiming an interest in or title to this land; then Adams took a better title to this land than they, the Reed heirs, and his title is preferred to theirs. But, if you find that there was sufficient there to indicate to him that the Reeds were claiming title, then it was his duty to make inquiry, and as a man of ordinary prudence he is bound to take notice of what was being done with this lot of ground, of what was there upon the ground by way of improvement or by way of cultivation that would indicate that somebody else was there claiming an interest in or a title to the lot in dispute.] [8]

Verdict and judgment for defendant.   Plaintiffs appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions; (6–8) above instructions, quoting them.

*S. B. Boyer, George Hill, D. W. Cox* and *J. W. Gillespie* with him, for appellants, cited: Riddle's App., 7 Atl. Rep. 232; Naglee v. Albright, 4 Wharton, 291; Stonebreaker v. Short, 8 Pa. 155.

*W. H. M. Oram, S. P. Wolverton* and *C. M. Clement* with him, for appellee, cited: Sweigart v. Frey, 8 S. & R. 299; Bellas v. McCarty, 10 Watts, 13; Brotherton v. Livingston, 3 W. & S. 334.

OPINION BY MR. JUSTICE McCOLLUM, November 8, 1895:

It is agreed that the title to the lot in dispute was in John B. Douty who died in November, 1873, testate. In 1881 his son, Wm. H. Douty, acting for his executors, sold the lot to the

defendant, who immediately entered into possession of it, built houses and made other valuable improvements upon it. In November, 1888, this suit was brought by the heirs of David Reed, who claimed to have an equitable title to the lot, derived from their father who acquired it in December, 1872, at a sheriff's sale upon his judgment against Tobias Koppenhaffer. In order to maintain their suit it was necessary for them to show by competent and credible evidence that Koppenhaffer had an equitable title to the lot when their father's judgment was entered, and this they undertook, but, as we think, signally failed to do. In the first place they did not show that there was a written agreement between Koppenhaffer and John B. Douty which invested the former as against the latter with such a title, or a verbal agreement of sale followed by payment of purchase money, and such possession and improvements by the vendee as would confer it. There is not more than a scintilla of evidence in the case which supports the contention that John B. Douty signed an agreement for the sale of the lot to Koppenhaffer. There is however evidence that a writing was delivered to the latter, but this was made and signed by Wm. H. Douty and described by him as a "forfeiture receipt," which was subsequently surrendered by Koppenhaffer, to whom the money it was given for, was refunded. The evidence fails to show that Wm. H. Douty had any written authority from his father to execute any paper connected with the transaction. The most that can be inferred from the testimony favorable to the plaintiffs, is that there was a verbal agreement between John B. Douty and Koppenhaffer for the sale of the lot to the latter, and that it was abandoned by the parties within three years, and perhaps as early as 1871. Koppenhaffer's testimony on this point is not clear, nor his recollection as to the time of abandonment, certain or satisfactory. But it is clear that no such payments or improvements were made or possession taken and maintained by him in pursuance of their agreement as clothed him with a title to the lot enforceable at law or in equity.

If Douty had sold and conveyed the lot to another before the abandonment of the agreement, Koppenhaffer's only remedy would have been an action for the breach of it. It follows from these views that Reed acquired no title to or interest in the lot

by his sale of it on the Koppenhaffer judgment. The taxes
upon the lot were not assessed to or paid by him or his estate,
and neither he nor his heirs made any improvements upon it.
From 1873 to 1881 Douty's estate paid the taxes and after that
they were paid by the defendant. An effort was made to show
that the Reeds were in possession of the lot after the sale of it
on the Koppenhaffer judgment, but the evidence on this point
was vague and meager. Harvey Mowrey testified that in 1873
" old Mrs. Reed and Aaron Reed raised potatoes and one thing
another upon" it. Fridel Heitzman testified that he plowed
the lot once for the Reeds, and saw " Aaron and the old woman "
plant something there. Susan Rogers testified that she went
upon the lot once with Mrs. Reed and Mrs. Reitz and saw them
gather some "tomatoes or radishes" there. These were the
only witnesses who testified in relation to the possession of the
Reeds; and none of them except Mowrey could tell in what
year she or he saw Mrs. Reed or Aaron upon the lot. For at
least fourteen years immediately preceding the institution of
this suit the plaintiffs made no claim to the lot, although during
the last half of that time the defendant was in possession of it
and made valuable improvements thereon with their knowledge
and without the least intimation from them that they had or
claimed to have an interest in it. The evidence is positive,
clear and undisputed that the defendant never heard of their
claim until this action was brought, and that there was nothing
upon the lot or upon the records which suggested that any per-
son had an interest in it which qualified his vendor's title to it.
It will be seen from this reference to the testimony that the
latter was insufficient to support the plaintiffs' contention, and
that the learned court below would have been justified in direct-
ing the jury to find for the defendant. The plaintiffs cannot,
therefore, justly complain of the instructions under which the
case was submitted. These instructions were more favorable to
them than they were, upon their own showing, entitled to.
Did the learned court err in its rulings upon offers of evidence?
We think not. The first and second specifications relate to the
rulings upon the offers of the receipt of June 3, 1873. For
the reasons stated in the objections to these offers we think the
receipt was properly rejected. It was not error to allow the
defendant to testify to his purchase of the lot in 1881 and to

his possession of, and his payments and improvements upon it. Nor do we think there was any error in the refusal of the court to strike out the testimony of Tobias Koppenhaffer in relation to his surrender of his purchase money receipt and the refunding of the money for which it was given.   We think it is clear that Wm. H. Douty was a competent witness to testify to the matters to which his attention was called.   He had no interest in the decision of the question involved in the case   His father died testate, and he was not entitled to anything under the will.

The specifications of error are overruled and the judgment is affirmed.